**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

SPIRITBANK,                                     )
                                                )
         Plaintiff,                         )
                                                )
v.                                              )          **Case No. 08-CV-0675-CVE-PJC**
                                                )
GARY McCARTY, CATHERINE                         )
McCARTY, and SECURITIES                         )
MANAGEMENT AND RESEARCH                         )
INC.,                                           )
         Defendants.                        )

**OPINION AND ORDER**

Now before the Court is Gary McCarty's and Catherine McCarty's Motion for Summary

Judgment and Incorporated Brief in Support Thereof (Dkt. # 50). Defendants Gary and Catherine

McCarty argue that the security agreement relied upon by SpiritBank to support its claims does not

identify any property owned by the McCartys and they are entitled to summary judgment on

SpiritBank's claims against them. SpiritBank responds that the parties intended to create a valid

security agreement and a minor typographical error cannot defeat the parties' intent.

**I.**

In 2004, SpiritBank loaned approximately $2,000,000 to Lucky and Carolyn Ott through

several separate loans, one of which was a $400,000 loan to Tulsa JV One, LLC (Tulsa JV). On

June 2, 2004, Gary McCarty executed a guaranty for this loan for the full amount of $400,000. Dkt.

# 54, Ex. A. On the same day, Gary and Catherine McCarty signed a commercial security

agreement giving SpiritBank a "PLEDGE LIMITED TO $100,000 ON SECURITIES

MANAGEMENT AND RESEARCH INC EQUITY INCOME MUTUAL FUND ACCOUNT #

66519 OWNED BY GARY L MCCARTY AND CATHARINE M MCCARTY." Dkt. # 50, Ex.

1. The McCartys had an equity income mutual fund account # 665916 (the Account) with Securities Management and Research, Inc. (SMRI), but the account number stated in the security agreement was incorrect.

Tulsa JV defaulted on the $400,000 loan in 2007 and SpiritBank filed a lawsuit in Tulsa County District Court, Oklahoma against Tulsa JV, Lucky and Carolyn Ott, and Gary and Catherine McCarty. SpiritBank and the defendants reached a settlement and executed a settlement agreement on February 8, 2008. In the settlement agreement, the parties listed the June 2, 2004 security agreement as an obligation owed by the McCartys to SpiritBank. Dkt. # 54, Ex. B, at 1. The McCartys also agreed to:

> sign, execute and deliver a Security and Pledge Agreement in favor of SpiritBank, whereby Gary L. McCarty and Catharine McCarty shall grant SpiritBank a first priority security interest in and to that certain Securities Management and Research, Inc., Equity Income Mutual Fund Account # 66519. SpiritBank's security interest shall be limited to $100,000 (hereinafter "Investment Account"). Gary L. McCarty and Catharine McCarty agree and acknowledge that all prior security interest granted to SpiritBank in the Investment Account shall remain effective. Gary L. McCarty and Catharine McCarty agree to use their best efforts to move said account to SpiritBank and/or Spirit Financial.

Id. at 6. If the defendants repaid the full amount of the outstanding debt, SpiritBank agreed to release its security interest in the Account. Id. at 7.

The defendants did not repay the debt and SpiritBank attempted to enforce its security interest in the Account. However, SpiritBank alleges that SMRI would not release funds to SpiritBank without a court order. According to SpiritBank, before it was able to obtain a court order authorizing SMRI to release the funds, the McCartys liquidated the account. SpiritBank filed this lawsuit alleging claims of breach of security agreement, fraud, constructive fraud, false

2

representation, unjust enrichment, and constructive trust and accounting against the McCartys.[1] Dkt. # 2-2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court

---

[1]     SpiritBank also filed a claim of breach of security agreement against SMRI, but has voluntarily dismissed that claim with prejudice.  See Dkt. # 53.

3

is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III**.

The McCartys argue that the account number listed in the security agreement is incorrect and, due to this error, the security agreement does not identify any property that belongs to them. Dkt. # 50, at 2-3.  SpiritBank responds that the McCartys had an account with SMRI and intended to give SpiritBank a security interest in that account, and the parties' intent to create a security interest controls over a typographical error in the written security agreement. Dkt. # 54, at 4-6.  The McCartys do not deny that the parties intended to create a security interest, but argue that SpiritBank does not hold an enforceable security interest in any property they own.  Dkt. # 55, at 1-2.

Oklahoma has adopted the Uniform Commercial Code (UCC), including Article 9 of the UCC concerning secured transactions.  See Rogers v. Dell Computer Corp., 138 P.3d 826, 831 (Okla. 2005).  Under OKLA. STAT. tit. 12A, § 1-9-203, a security interest in enforceable against a debtor if:

(1) value has been given;

(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(3) one of the following conditions is met:

(A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;

(B) the collateral is not a certificated security and is in the possession of the secured party under Section 1-9-313 of this title pursuant to the debtor's security agreement;

(C) the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under Section 8-301 of this title pursuant to the debtor's security agreement; or

(D) the collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights, or electronic documents, and the secured party has control under Section 7-106, 1-9-104, 1-9-105, 1-9-106, or 1-9-107 of this title pursuant to the debtor's security agreement.

Oklahoma courts have looked to the parties' intent, rather than the form of a document, to determine if a security interest has been created. OKLA. STAT. tit. 12A, § 1-9-102; First Nat'l Bank & Trust Co. of Stillwater v. McKown, 867 P.2d 1342, 1346 (Okla. Civ. App. 1993); Georgia-Pacific Corp. v. Lumber Products Co., 590 P.2d 661, 664 (Okla. 1979).

The McCartys argue that SpiritBank lacks an enforceable security interest in the Account, because the account number stated on the security agreement is inaccurate and no property owned by the McCartys is identified in the document. The parties agree that the account number stated in the security agreement is incorrect, but this does not automatically mean that the McCartys are entitled to summary judgment on all of SpiritBank's claims. "[T]he principles of law and equity, including . . . the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement [the UCC's] provisions." OKLA. STAT. tit. 12A, § 1-103. The evidence shows that the parties intended to give SpiritBank a security interest in the Account, and the McCartys do not deny that this was their intent. Dkt. # 55, at 1. Even if the security agreement is unenforceable, SpiritBank may still have a valid claim for fraud, constructive fraud, false representation, unjust enrichment, and constructive trust and accounting against the McCartys, because the McCartys'

silence as to the inaccuracy in the security agreement raises a genuine issue of material fact as to whether they purposefully misled SpiritBank about the enforceability of the security agreement. Summary judgment is not appropriate as to these claims but, if the security agreement is unenforceable, the McCartys may be entitled to summary judgment on SpiritBank's breach of security agreement claim.

SpiritBank argues that the McCartys intended to confer a security interest in the account to SpiritBank, and this intent, not a scrivener's error on the security agreement, is controlling under Oklahoma law.  SpiritBank's argument concerning the parties intent is not responsive to the argument raised in the McCartys' motion for summary judgment.  There is no dispute that the McCartys intended to give SpiritBank a security interest.  The issue in this case is whether an error in the written security agreement renders it unenforceable, and this is a separate issue from the intent of the parties to enter a security agreement.  The cases cited by SpiritBank concern whether a particular agreement or document constitutes a security agreement under the UCC, not whether an error in a document can be amended or corrected based on the parties' intent at the time the security agreement was executed.  See Mitchell v. Shepherd Mall State Bank, 458 F.2d 700, 703-04 (10th Cir. 1972) (financing statement could not be used to expand collateral subject to a security agreement, because the underlying security agreements did not show intent to create a security interest in that collateral); First Nat'l Bank Co. of Stillwater, 867 P.2d at 1345 (oral agreement and letter between the parties created a security interest); Economy Finance Agency v. Stickney, 738 P.2d 1386, 1388 (Okla. Civ. App. 1987) (loan contracts contained sufficient language showing that the parties intended to create a security interest in collateral).

SpiritBank's response could reasonably be construed to contain an argument that a typographical error in a written security agreement should not defeat the parties' intent to create a security interest in certain collateral.  There is an equitable doctrine allowing for reformation of a contract to correct a scrivener's error:

> Under the doctrine of scrivener's error, the mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is "clear, precise, convincing and of the most satisfactory character" that a mistake has occurred and that the mistake does not reflect the intent of the parties.

Int'l Union of Electronic, Elec., Salaried, Machine and Furniture Workers, AFL-CIO v. Murata Erie North America, Inc., 980 F.2d 889, 907 (3d Cir. 1992).  This doctrine is consistent with Oklahoma law concerning the reformation of contracts.  The Oklahoma Supreme Court has stated that:

> Reformation is a contract remedy available to conform a written contract to the parties' antecedent agreement when that written contract differs from the antecedent expressions on which the parties based their agreement.  Reformation requires proof of the contract to be reformed and proof, by clear and convincing evidence, of a mutual mistake or mistake by one party and inequitable conduct on the part of the other that resulted in a written contract that did not reflect the parties' intent.  Reformation corrects a mistake between the written document and the actual intent of the contracting parties, but reformation does not rewrite a contract because it has become less favorable to one party due to subsequent economic changes.

Oklahoma Oncology & Hermatology P.C. v. US Oncology, Inc., 160 P.3d 936, 947 n.2 (Okla. 2007) (internal citations omitted).  Based on existing Oklahoma law, the Court finds that the Oklahoma Supreme Court would permit reformation of a contract to correct a scrivener's error when there is sufficient evidence of mutual mistake or fraudulent conduct by a party opposing enforcement of a security agreement.

The Court does not have an adequate record to rule on the issue of reformation, but finds that the potential for reformation of the security agreement requires the Court to deny the McCartys' motion for summary judgment.  There is a genuine issue of material fact as to whether the error in

the written security agreement was the result of mutual mistake or inequitable conduct.  The McCartys do not address the possibility that the security agreement could be reformed to comport with the parties' undisputed intention to give SpiritBank a security interest in the Account, and it is not clear that an incorrect account number in the security agreement is sufficient to defeat SpiritBank's security interest in the Account.

**IT IS THEREFORE ORDERED** that Gary and Catherine McCarty's Motion for Summary Judgment and Incorporated Brief in Support Thereof (Dkt. # 50) is **denied**.

**DATED** this 23rd day of October, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT